We will hear our argument now in the case of the United States v. Williams. Mr. Camarena. Thank you. Good morning, Your Honors. All police counsel may please the court. My name is Paul Camarena and I'm the court appointed counsel for the appellant, Mr. Calvin Williams. In this case, although Mr. Williams is the appellant, he comes here with significant advantages. And that advantage is mainly that people who are far smarter than me have already reviewed the record in this case and have already determined that the district court erred in this case. Of course, Mr. Williams' first appellate counsel submitted… How so? There was a ruling rejecting the Anders brief on the ground that an issue was non-frivolous. Yes. It doesn't establish that the contention is right. It just establishes that there was a non-frivolous argument. Yes. So we need to go through it now to see whether that argument is correct. Absolutely, Your Honor. The court order stated that Mr. Williams was misled and that the district court conveyed inaccurate information to Mr. Williams. The court order didn't equivocate on that point. The court order didn't say that he… Look, that order establishes only that there is a non-frivolous issue. We need to stop talking about it and start talking about what happened in the district court. Yes, Your Honor. I understand. When Mr. Williams was pleading guilty, Mr. Williams advised the district court first that he understood that he would be facing a mandatory life sentence. He then advised the district court that because he understood that he would be facing a mandatory life sentence, he instructed his lawyer to go ahead and negotiate this plea agreement. After he made that statement, he advised the district court that he did not distribute 500 grams or more of methamphetamines. The 500 grams or more is important because that's the only way that Mr. Williams would have faced a mandatory life sentence. And after he advised the district court that he cannot, his own words were he cannot honestly say… Counsel, let me tell you what my problem is with your argument. We are here on plain error review. There was no request to withdraw the plea in the district court, no ruling by the judge. Why are we bound to believe, given the standard of review, that the defendant misunderstood the sentences he was facing? The judge said that if the allegations of the indictment were proved, then the mandatory sentence was life, and that was true. The judge also said that if a different quantity was proved, the sentence could be lower. So there is some potential ambiguity about what Williams understood. But given that we're on plain error review and Williams has, say, never testified about what he understood, don't you have a problem? I do, Your Honor, but I think I can overcome that. During the district court proceedings, after Mr. Williams stated that he was subject to a mandatory life sentence, the court and attorneys repeated mandatory life five separate times. It wasn't until the colloquy between the district court and Mr. Williams had concluded that the district court mentioned almost in passing, after it was brought up to him, that had Mr. Williams not been convicted of distributing 500 kilograms or more, the mandatory sentence would have been life. Look, I'm perfectly willing to believe that Williams might have been confused by that colloquy, but we're here on plain error review. Don't we have to have conclusive proof that he misunderstood what was going on? It's hard to find conclusive proof because the judge said, if there's a lower quantity proved, then there's a lower sentence. How do we get over the plain error threshold of review? That's the question I'm posing to you. Your Honor, it's correct that we don't have conclusive proof in the sense that we have testimony by Mr. Williams, because if we had testimony by Mr. Williams- Well, his testimony wouldn't be conclusive either. It could be disbelieved. Right. Well- I'm just wondering if you aren't saying, or would have to show, that every reasonable person would have misunderstood what the sentence could be. And that's a very hard thing to show. Your Honor, I think that a reasonable person with Mr. Williams' background, and having been- That starts out unreasonable, but go ahead. Yes. A person with Mr. Williams' background, and by that I'm not referring to his criminal convictions, I'm referring to the fact that he doesn't even have a high school education. After having heard a district court advise him, along with counsel, five times that you're facing a mandatory life sentence, that would have been, I can't imagine, a more impressive statement to make to a defendant other than, you are facing a mandatory life sentence. Well, he was facing a mandatory life sentence. If the prosecution proved it's charged, that was going to be his sentence. Yes. And if the district judge hadn't emphasized that strongly, I assume you would be here contending that the district judge didn't really pound it home to him, that if he didn't strike a good plea deal, he was going to jail for life if the prosecution proved it's case. The judge had to emphasize that. He did emphasize that, but what he didn't emphasize, Your Honor, what he only mentioned in passing after having mentioned the mandatory life sentence, is the actual sentence had Mr. Williams been convicted of what he had conceded. The actual mandatory sentence, had Mr. Williams been convicted of what he had conceded, would have only been 10 years in prison, and his guideline range, even according to the government, would have been far more favorable than a mandatory sentence. Let me ask my question in still a different way. What relief are you requesting in this case? Your brief ends with the conclusion that you're asking us to hold that the potential ambiguity did, in fact, affect Williams' decision. Yes, Your Honor. Have you considered asking instead for an evidentiary hearing? No, Your Honor, and I'm not sure that that's necessary. Pursuant to the court's order I've discussed with, just to answer your initial question, I have met with Mr. Williams twice in person at the prison where he's being held. He has advised me that he wants to withdraw his plea. I think that the record is sufficient for the court to find that someone Mr. Williams Most lawyers think it prudent to make fallback arguments. I understand that, Your Honor. Given Mr. Williams' position and given what he has advised me, I don't believe that that's necessary. But if the court would entertain that, I can certainly Let me explain why I believe that that may be an appropriate thing to do. There is some ambiguity here, but there isn't just some ambiguity. It's an important misstatement or misinformation given to the defendant. There isn't anything more impressive that a district court judge can tell a defendant other than you are facing a mandatory life sentence. Especially after that defendant has said that and said, Well, because I'm facing a mandatory life sentence, I instructed my defense counsel to negotiate a plea agreement. But in fact, given what Mr. Williams pled guilty to, he wasn't facing a mandatory life sentence. He was only facing But that's after all of the concessions by the government. As I understand the chronology here and stipulations, there were negotiations. That's what happens. But as originally charged, his exposure was life as a mandatory sentence. Yes, Your Honor. He could have, and he still can, accept that he distributed methamphetamines while still disputing the amount of methamphetamine. He has testified that he distributed methamphetamines, but he has said in his own words that he honestly can't say that he distributed more than 500. Right. The dispute is all about how much, which is the driving factor for the sentence or one of the driving factors for the sentence. We've also got recidivism issues here, don't we? Yes, Your Honor, that's right. But his guideline range would have been the low end of his guideline range, even if he'd gone to trial and lost, even according to the government's calculations that they mentioned in their brief, would have been several years less than the mandatory 20-year sentence that he agreed to. After the government made certain concessions or stipulations about what it could prove, right? Or what it was willing to give up. I don't think that's actually correct, Your Honor. Had Mr. Williams been convicted of distributing less than 500 grams of methamphetamine, his guideline range would have been several years less than the 20-year sentence. Right, but that's the amount that was arrived at after negotiations, not the original charge. Yes, Your Honor, but that's the amount that Mr. Williams conceded. He never conceded that he distributed more than 500. I don't want to abuse the Court's time. Thank you, Mr. Cameron. Thank you, Your Honor. Mr. Phillips. Good morning, Your Honors. May it please the Court, Sagan Phillips on behalf of the United States. Your Honor is absolutely correct that we are here on plain error and that there's no evidence in the record to suggest that he misunderstood sensing exposure. When somebody is pleading guilty, they're doing two things, right? One is that they should be knowledgeable about the risk that they're undertaking when they're actually pleading. Here, this was a C agreement, so there can be no question that he knew the risk was that he would get 20 years  The second is that they should be knowledgeable about the risk that is mitigated when they are pleading guilty. And in this case, the risk that was being mitigated was specifically the potential for mandatory life sentence. And on the low end, it was a 10 to life. Both of those things were mentioned. And as the Court stated, we would be concerned if a district court having a case that had a potential mandatory life sentence didn't stress that that was a possibility. And so in this case, both of those things happened. I would say that even beyond the question of whether there is no evidence to suggest that he misunderstood, there's, quite frankly, evidence to the contrary and evidence that suggests that he absolutely would have accepted this very deal had the slight deviation from Rule 11 been corrected. And that is, if you look to the record, in the change of plea, the PSR, the sentencing transcript, he never stated that he didn't understand, even though he was sitting there. In fact, knowing everything he knew through his attorney, he urged the Court to accept the plea and sentence him to 20 years. If you look to the statements, when he met with the Court without the government there, he said, My decision is clear. I should go forward. And then, contrast that, or with that, he said at the sentencing when he was speaking, he said, I never wanted to drag this case out and fight it. He was going to accept this 20 years, and it's clear that the government was not offering anything less than 20 years because it believed in its evidence. And lastly, it's just a numbers game. It's implausible to believe that somebody would reject a 20-year plea when, at best, if his theory of the case is proven, he would likely face a guidelines range of 210 to 262 months, and at the high end would face the risk of mandatory life. If the Court has no questions, the government will rest on its briefs. Thank you very much. The case is taken under advisement.